**In re the INN AT GRAND GLAIZE, LTD., Debtor.**

**The INN AT GRAND GLAIZE, LTD., Plaintiff,**

v.

**NATIONAL BANK OF WASHINGTON, Defendant.**

Bankruptcy No. 88–00114–C–11.
Adv. No. 88–0122–C–11.

United States Bankruptcy Court, W.D. Missouri, C.D.

Aug. 8, 1988.

Norman E. Beal, Kansas City, Mo., for debtor/plaintiff.

Larry A. Reed, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This adversary action was brought to determine if National Bank of Washington, Trustee, hereinafter Bank, was secured as to the personal property of The Inn at Grand Glaize, Ltd., hereinafter debtor. On September 25, 1985, the Bank loaned $9,500,000.00 to Grand Glaize Inn Partners (hereinafter GGIP), a Missouri limited partnership. The purpose of the loan was to finance the real estate and personal property that were the component parts of a hotel at Osage Beach, Missouri, usually called Inn at Grand Glaize or The Inn at Grand Glaize. GGIP executed a note, a real estate deed of trust, a security agreement, and requisite UCC–1s. The deed of trust was duly recorded. The UCC–1s were duly filed under three names: Linclay Hotel Corporation, Grand Glaize Hotel, Inc., and Grand Glaize Inn Partners.

On December 31, 1985, debtor purchased the hotel from GGIP and assumed all of the debt under the note and the obligations under the security documents. The Bank agreed to the assumption and transfer of the property and everyone lived happily thereafter until debtor defaulted in payments, the Bank scheduled a foreclosure, and debtor filed its petition for Chapter 11 reorganization on January 11, 1988. Note that in the foregoing synopsis there is no mention that the Bank refiled UCC–1s under the name of the debtor. Thus the Bankruptcy Court, somewhat like Stephen Sondheim, must pick up the tale after the traditional ending and portray the epilogue to these events.

With that background, "Into The Woods" this opinion proceeds. Debtor contends that since the Bank never filed UCC–1s (new financing statements) after the known and consented to transfer of the personal

property to debtor, the Bank is not perfected and, therefore, unsecured as to the personal property of the debtor, at least in the connotation of bankruptcy law. Each side in its brief cites cases to support the necessity vel non of refiling UCC–1s where there is a known change in the name or composition of the debtor who is a party to an ongoing security agreement in identical collateral.

The Court's probable inclination would be toward the position of the Bank where no actual harm was shown to have occurred and no creditor was shown to have relied on a technical error to that creditor's detriment. The real result of upholding debtor's position, is that the debtor who is now the debtor in possession and who assumed the debt, and would have gladly signed a dozen UCC–1s in whatever name the Bank requested, now obtains a windfall from a technical error. However, there are two problems with that position. First, when the debtor becomes a debtor in possession he sheds the robe of corruption and assumes the mantle of incorruptibility because he stands in the same position as a Trustee against whom the former sins of the debtor avail the parties nothing. (A transformation which is no more explainable to a lay creditor than St. Paul's epistle to the Corinthians was to the residents of Corinth and can be based only on blind faith.) Second, the Bank has not cited nor has the Court found in its limited research a case wherein the name of the debtor and the identity of the debtor both have changed with not only the knowledge but indeed the blessing of the creditor and the creditor thereafter was declared (in a bankruptcy context) to be properly perfected by the UCC–1s filed before the dual change.

The rationale for requiring refiling upon a change in the name or identity of the holder of the property is both practical and historical. Historical in that before the advent of the Uniform Commercial Code, many states, including Missouri, enforced very strict limits on floating or blanket liens. The pre-code cases required rigid standards of mortgage registration. Indeed, Missouri was one of the minimal number of states to adopt the so called

"dual filing" option under the Code in an attempt to create as substantial a notice base as the Code allowed. The practical reason is more obvious. A creditor investigating the financial status of the debtor must be able to rely on either an official or unofficial search of a recordation system that is totally and solely geared to an alphabetical control. For example, the correct name of the debtor since December of 1985 has been The Inn At Grand Glaize, Ltd. Our hypothetical creditor would search under "I" not under "G". No where under "I" would any one of the Bank's three UCC–1 filings show up.

To summarize then, § 400.9–402 R.S.Mo. requires the filing of a financing statement in the name of the debtor. The Bank's financing statements were not so filed. 11 U.S.C. § 1107 invests a debtor in possession with the rights and powers of a Trustee. 11 U.S.C. § 544 provides that the Trustee occupies the position of a hypothetical judicial lien creditor. Such a creditor could have levied successfully on the personal property of the debtor because of the lack of proper perfection.

The Court, therefore, determines that the lien of the Bank is not effective as to the tangible personal property of the debtor because of the known changes in the identity of the grantor of the security interest and the name of the aforesaid grantor. Although either event might well prove fatal to the Bank's position, the duality is overwhelming in dictating this result.

This Opinion shall constitute Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.